RICHARD T. BOWLES (# 46234)
DAVID W. TROTTER (# 97121)
JASON J. GRANSKOG (# 190233)
BOWLES & VERNA LLP
2121 N. California Blvd., Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371
Email: rbowles@bowlesverna.com
        dtrotter@bowlesverna.com
        jgranskog@bowlesverna.com

Attorneys for Plaintiff and
Chapter 11 Trustee Bradley D. Sharp

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P., a California limited partnership, et al.,<br><br>               Debtors. | U.S. Dist. Ct. Case No.<br>2:14-cv-1169-KJM-AC<br>Bankruptcy Case No. 09-29162-D-11<br><br>Adversary Proceeding No. 14-02025-D<br><br>Chapter 11<br><br>DC No. BMZ-2 |
| BRADLEY D. SHARP, as Chapter 11 Trustee of SK Foods, L.P., a California limited partnership, and RHM Industrial / Specialty Foods, Inc., a California corporation, et al.,<br><br>               Plaintiff,<br><br>vs.<br><br>KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP, a New York registered limited liability partnership; DONALD J. PUTTERMAN, an individual; and DOES 1 through 30,<br><br>               Defendants. | **OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**<br><br>Date:    July 11, 2014<br>Time:   10:00 a.m.<br>Ctrm:   3 |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................... 2

    A.    Defendants' Representation Of The Debtors. ............................... 3

    B.    Procedural Background Of This Adversary Proceeding. ............... 5

III.  WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING
       TO THE BANKRUPTCY COURT IS NEITHER REQUIRED NOR APPROPRIATE........ 6

    A.    Legal Standard For Withdrawal. ................................................ 6

    B.    Withdrawal Of Reference Is Not Mandatory. .............................. 7

    C.    Defendants Have Not Shown Good Cause For Permissive Withdrawal. ...................... 9

         1.    *Stern v. Marshall* Does Not Support Defendants' Motion to Withdraw The Reference. ...................................................................... 10

         2.    Defendants Have Waived Their Right to A Jury Trial. .................... 13

    D.    Other Jurisprudential Factors Also Support Denial of Defendants' Motion To Withdraw The Reference.................................................. 14

         1.    Efficient Use Of Resources, And Delay And Cost To The Parties. ............... 14

         2.    Uniformity Of Bankruptcy Administration. ..................................... 15

         3.    Prevention Of Forum Shopping. ................................................. 16

    E.    Even If This Court Considers Withdrawing The Reference For Trial, The Bankruptcy Court Should Retain Jurisdiction Of All Pre-Trial Proceedings. ............. 16

IV.   CONCLUSION..................................................................................... 17

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

## **TABLE OF AUTHORITIES**

### Cases

*Bell v. Lehr*, 2014 U.S. Dist. LEXIS 15837, 7-8 (E.D. Cal. Feb. 6, 2014) ................16

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671
    F.3d 1011, 1022 (9th Cir. 2012) ................16

*Day v. Rosenthal*, 170 Cal. App. 3d 1125, 1149 (1985) ................13

*Exec. Benefits Ins. Agency v. Arkison*, __ U.S. __, __ S.Ct.__, 189 L.Ed.2d 83 (2014), ................1, 17

*Field v. Lindell (In re Mortgage Store, Inc.)*, 464 B.R. 421, 429 (D. Haw. 2011) ................15

*Gerwan Farming, Inc. v. Townsend Townsend & Crew LLP*, 2011
    U.S. Dist. LEXIS 108671, at * 2-3 (E.D. Cal. Sept. 23, 2011) ................2

*Granfinanciera [S. A. v. Nordberg*, 492 U.S. 33] ................12, 13

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) ................2

*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*, 464
    B.R. 348, 358 (N.D. Cal. 2011) ................14, 15

*In re Am. Hous. Found.*, 2013 Bankr. LEXIS 774, at 16 (Bankr. N.D. Tex. Mar. 1, 2013) ................13

*In re Appalachian Fuels, LLC* 472 B.R. 731, 747 (E.D. Ky. 2012) ................13

*In re EPD Inv. Co. LLC*, 2013 U.S. Dist. LEXIS 136894, 15 (C.D. Cal. Sept. 24, 2013) ................15

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993) ................9, 10

*In re Roman Catholic Bishop of San Diego*, 2007 U.S. Dist. LEXIS 60954, at  p. 3
    (S.D. Cal. Aug. 20, 2007) ................9

*In re Security Farms, supra*, 124 F.3d at 1008 ................9

*In re Vicars*, 96 F.3d 949, 953 (7th Cir. 1996) ................9

*Janssen v. Hirsch (In re Creekside Vineyards, Inc.)*, 2009 U.S. Dist. LEXIS 96560, 11-12
    (E.D. Cal. Oct. 16, 2009) ................9

*Katchen v. Landy*, 382 U.S. 323, 333 (1966) ................11, 12

*Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ................11, 12, 13

*Locke v. Cottman Transmission Sys., LLC (In re Kund LLC)*, 2010 Bankr. LEXIS 133, 1-2
    (Bankr. N.D. Cal. Jan. 15, 2010) ................13

*Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin)*, 2012 U.S. Dist. LEXIS 99971,
    at p. 7 (E.D. Cal. July 17, 2012) ................17

*Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 161
    (9th Cir. 1986) ................10

*Schlumberger, Ltd. v. Superior Court*, 115 Cal.App.3d 386, 392 (1981) ................................ 2

*Security Farms v. International Bd. of Teamsters (In re Security Farms)*, 124 F.3d 999,
  1008 n.4 (9th Cir. 1997).......................................................................................... 8, 9 14

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787
  (9th Cir. 2007).................................................................................................................. 7

*Stern v. Marshall*, 564 U.S. ___, 131 S.Ct. 2594, 2608, 2616 (2011) ............. 6,10, 11, 12, 13, 14, 16, 17

*Stratton v. Garcia*, 2007 U.S. Dist. LEXIS 14434, 3-4 (E.D. Cal. Feb. 9, 2007)................................. 6, 8

*U.S. Bank Nat'l Ass'n v. Verizon Communications, Inc.,* 2012 U.S. Dist. Lexis 103900, at 8-9
  (N.D. Tex. July 25, 2012) ......................................................................................... 13

**Statutes**

11 U.S.C. § 1104 ................................................................................................................ 4

11 U.S.C. § 542 ................................................................................................................. 5

11 U.S.C. §§ 503(b) and 507(a) ......................................................................................... 5

28 U.S.C. § 157(b)(2) .................................................................................................... 8, 10

28 U.S.C. § 157(b)(2)(C) ................................................................................................... 10

28 U.S.C. § 157(d) ............................................................................................................ 6

28 U.S.C. §§ 1334 (a), 157(a) ............................................................................................ 6

California Evidence Code § 958 ........................................................................................ 2

**Rules**

E.D. Cal. Gen. Order No. 223 ............................................................................................ 6

E.D. Cal. Local Rule 141(a)............................................................................................... 3

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

# I. INTRODUCTION

Bradley D. Sharp ("Trustee"), the duly appointed and acting Chapter 11 trustee for SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM" and, together with SK Foods, the "Debtors") hereby opposes the Motion To Withdraw The Reference Pursuant To Federal Rule Of Bankruptcy Procedure 5011 filed by defendants Kasowitz, Benson, Torres & Friedman, LLP ("Kasowitz") and Donald J. Putterman ("Putterman") (collectively, "Defendants").

As will be seen below, this is a "core" proceeding, in that the Trustee's claims against Defendants "arise under" the Bankruptcy Code and "arise in" a bankruptcy case. Further, to the extent that Defendants had a right to a jury trial, **Defendants waived that right by filing a proof of claim,**[1] **a critical fact that Defendants fail to mention in their moving papers**. Under the facts and circumstances of this case, the Trustee submits that the Bankruptcy Court can hear and finally determine all of the Trustee's claims in this adversary proceeding, and the motion to withdraw the reference should be denied in its entirety.

However, in the event this Court were to hold that a final adjudication of some of the Trustee's claims is outside the scope of the Bankruptcy Court's authority, the Bankruptcy Court is authorized to make all determinations up to the point of entering a final judgment on any such claims. In such instance, the Bankruptcy Court would finally determine the Defendants' proof of claim and Trustee's objection thereto, along with the other core claims "arising under" the Bankruptcy Code, while making proposed findings of fact and conclusions of law as to the remaining claims, which would be subject to *de novo* review in this Court. The constitutionality of this process has very recently been confirmed by the Supreme Court (*Exec. Benefits Ins. Agency v. Arkison*, __ U.S. __, __ S.Ct.__, 189 L.Ed.2d 83 (2014)), and thus denial of Defendants' motion to withdraw the reference would constitute the best use of the scarce resources of this Court.

---

[1] As noted previously in the Bankruptcy Court, the Trustee is prepared to waive his right to a jury trial if such waiver were a prerequisite or precondition to the Bankruptcy Court's retention of jurisdiction over and ability to finally decide the entire action.

## II. FACTUAL BACKGROUND

The relationship between the Debtors and Defendants has already been the subject of contested hearings and subsequent findings and rulings by the Bankruptcy Court (Judge Bardwil) and by Judge Karlton of this Court.  The Trustee intended to summarize the facts set forth in Judge Bardwil's October 16, 2009 Memorandum Decision and Order disqualifying Defendants from representing various parties to this bankruptcy proceeding, and the February 23, 2010 Order issued by Judge Karlton, affirming Judge Bardwil's Order on appeal.  See Trustee's Request for Judicial Notice ("RJN"), filed concurrently herewith, and ¶¶ 1 – 2 thereto.

Indeed, after reviewing the parties' separate statements of material disputed facts submitted along with the briefing on the motion to disqualify, Judge Bardwil determined "that there is no material factual dispute…."  Judge Bardwil's Order, affirmed on appeal by Judge Karlton, has established that Defendants represented the Debtors and breached their professional duty to avoid conflicts of interest, which finding is conclusive of the issue under the doctrine of collateral estoppel. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (applying California law).

Judge Bardwil's Memorandum Decision and the two Disqualification Orders were originally filed under seal, and the orders sealing those proceedings remain in place.  See Declaration of David W. Trotter, filed concurrently herewith ("Trotter Decl."), ¶¶ 5-6, and Exs. 1 and 2 thereto.  However, the Trustee's filing of this adversary proceeding against Defendants, as well as Defendants' filing of their proof of claim, operate as a matter of law to waive any previously existing attorney-client privilege between Defendants Kasowitz and Putterman, and the Debtor entities.[2]
There is thus no longer any legal basis for the disqualification orders, or the underlying motion or opposition papers, to remain under seal.  Trotter Decl. ¶¶ 8-9.

With the foregoing in mind, counsel for the Trustee asked counsel for Defendants to stipulate to an order unsealing the disqualification orders and motion proceedings.  Defendants' counsel did not

---

[2]  California Evidence Code § 958, directly on point here, provides that "[t]here is no privilege . . . as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."  See also, *Schlumberger, Ltd. v. Superior Court,*115 Cal.App.3d 386, 392 (1981)  (Evidence Code § 958 waiver of attorney-client privilege applies to claims of alleged breach between client and former attorney, not to communications between client and another attorney not alleged to committed any breach of duty); *Gerwan Farming, Inc. v. Townsend Townsend & Crew LLP*, 2011 U.S. Dist. LEXIS 108671, at * 2-3 (E.D. Cal. Sept. 23, 2011) (noting that the attorney-client privilege "that existed before the initiation of this [legal malpractice] action no longer applies").

1   dispute the Trustee's filing of this adversary proceeding effectively waives any attorney-client

2   privileges as between the Debtors and Defendants.  Trotter Decl. ¶ 10.  The ensuing e-mail

3   communications between counsel on this subject are attached as Exhibit 3 to the Trotter Declaration.

4   Ultimately, Defendants refused to stipulate to the unsealing of the disqualification rulings and orders as

5   requested; and indicated they would not do so unless the Trustee agreed to a "quid pro quo" – i.e., that

6   he also agree to waive any and all attorney-client privileges that continue to exist between the Debtors

7   and Winston & Strawn, the Debtors' former bankruptcy counsel.  Trotter Decl. ¶ 12, and Ex. 3 thereto.

8   Seeing no relation between the unsealing of the disqualification proceedings and Defendants' separate

9   and overreaching (if not unethical) privilege waiver demand, the Trustee declined to agree to it, and so

10  advised opposing counsel.  Trotter Decl. ¶ 13, and Ex. 3 thereto.

11          Defendants' refusal to timely stipulate to the unsealing of Judge Bardwil's Memorandum

12  Decision and the ensuing disqualification orders has prevented the Trustee from providing copies of

13  these ruling and orders to this Court with his Request for Judicial Notice.  Trotter Decl. ¶ 16.

14  Nonetheless, the disqualification orders and other documents filed under seal are properly available for

15  review by "authorized court personnel."   Trotter Decl. ¶ 16, and Ex. 2 thereto; to the same effect, see

16  E.D. Cal. Local Rule 141(a).  The Court thus may review those orders in connection with its

17  consideration of Defendants' motion here.  The Trustee respectfully requests that this Court review the

18  rulings of both Judge Bardwil and Judge Karlton in order to better understand the details of the prior

19  representation of the Debtors by Defendants, and the particular conduct which led to Defendants'

20  disqualification.

21          **A.     Defendants' Representation Of The Debtors**

22          Although the disqualification proceedings remained sealed, Defendants' moving papers refer,

23  without objection, to the Trustee's complaint in the adversary proceeding, and the factual allegations

24  contained therein.  RJN, ¶ 3.   On or about April 10, 2009, Scott Salyer ("Salyer"), the then acting chief

25  executive of both SK Foods and RHM, engaged Defendants to represent the Debtors in its negotiations

26  with its secured lenders and prepare for filing their Chapter 11 bankruptcy cases.  The Kasowitz

27  engagement letter with Defendants ("Engagement Letter") states the representation is on behalf of

28  "Salyer Enterprises" and is signed by "Scott Salyer, Client, Personally and on Behalf of Salyer

---

3

Enterprises and its individual entities." RJN, Ex. A at 30.  (A copy of the Engagement Letter is attached as Exhibit 1 to the Trustee's First Amended Complaint)

As Defendants acknowledge in their moving papers, there is no legal entity named "Salyer Enterprises"; rather it was a "short hand" name used to refer collectively to SK Foods and various affiliates owned by Mr. Salyer and his daughters.

The Engagement Letter provides that Defendants will provide services "in connection with matters relating [to] the debtor's lenders."  Defendants did just that, representing the Debtors, Salyer, and various other SK Foods affiliates in discussions and negotiations with the lenders over the next several weeks.

Before Debtors filed for bankruptcy protection and for several weeks thereafter, Defendants gave legal advice and engaged in conduct that benefited certain of the SK Foods affiliates to the detriment of the Debtors.  After the Debtors filed for bankruptcy protection, Defendants continued to represent the SK Foods affiliates in litigation and other matters adverse to the Debtors, falsely claiming that the Debtors had never been their clients.

On May 5, 2009, involuntary bankruptcy petitions were filed against Debtors SK Foods and RHM, and on May 7, 2009, SK Foods and RHM filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  On May 18, 2009, the Bankruptcy Court entered an order appointing Bradley D. Sharp as the Chapter 11 Trustee for the Debtors, and since that time, he has assumed control over the Debtors' property and affairs pursuant to 11 U.S.C. § 1104.[3]

As mentioned above, Defendants were disqualified from representing any party to this proceeding by the Memorandum Decision and Order of Judge Bardwil, which disqualification was affirmed on appeal by Judge Karlton.  On October 4, 2013, Judge Bardwil entered a Judgment in Adversary Proceeding No. 10-02014, granting the Trustee's request to substantively consolidate the

---

[3] All future section references, unless otherwise indicated, are to Title 11 of the United States Code (the "Bankruptcy Code").

1    assets of several of the SK Foods Affiliates into the Debtors' Estate, *nunc pro tunc* to the bankruptcy

2    petition date of May 5, 2009.[4]  RJN, ¶ 4.

3        **B.**    **Procedural Background Of This Adversary Proceeding**

4           The Trustee filed his original Complaint and initiated this adversary action on January 21,

5    2014.  The Trustee's original complaint asserted claims for breach of fiduciary duty, malpractice,

6    constructive trust, unjust enrichment and unfair business practices on behalf of the Debtors and New

7    Debtor Entities against the Defendants.

8           On February 4, 2014, Defendants filed a proof of claim in the SK Foods, L.P. bankruptcy

9    proceeding, Case No. 09-29162-D-11.  RJN, ¶ 5.  In the proof of claim, Defendants seek payment of

10   approximately $450,000 for legal services.  Defendants also assert that their claim for "unpaid fees" is

11   entitled to administrative priority under 11 U.S.C. §§ 503(b) and 507(a), a claim that is only available

12   to professionals who have performed services on behalf of the estate during the pendency of the

13   bankruptcy.  Defendants further assert that should they be found liable for damages to the Trustee, or

14   be ordered to disgorge any amounts to the Trustee based upon the Trustee's complaint, they are

15   entitled to "indemnification" or reimbursement from both the Debtors and New Debtors Entities for

16   any disgorged amounts or damages award rendered against Defendants.

17          On February 18, 2014, the Trustee filed a First Amended Complaint, adding causes of action

18   for objection to the proof of claim, to avoid and recover funds previously paid to Defendants as

19   fraudulent and/or preferential transfers (see 11 U.S.C. §§ 547, 548 and 550), and to recover tangible

20   property of the estate (see 11 U.S.C. § 542).

21          On March 28, 2014, Defendants filed a motion to compel arbitration of the dispute with the

22   Trustee, and dismiss the adversary action.  The motion to compel arbitration was initially set for

23   hearing on May 28, 2014.

24          On April 10, 2014, counsel for the parties attended a case management conference in this

25   adversary proceeding.  During the conference, the Court raised the question of whether the bankruptcy

26

27   4 The affiliated entities are SK PM Corp., SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Salyer Management Corporation, LLC, Monterey Peninsula Farming LLC, SK Farms Services, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II,

28   LLC, SSC Farms III, LLC, and SS Farms, LLC.  These affiliated entities are hereinafter collectively referred to as the "New Debtor Entities."

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

court was the proper forum for this dispute, including whether the Court had jurisdiction to hear the pending motion to compel arbitration, particularly in light of *Stern v. Marshall,* 564 U.S.___, 131 S.Ct. 2594 (2011).  Counsel for the parties provided initial briefing on this issue for the Bankruptcy Court and attended a subsequent case management conference on April 29, 2014.  At the second conference, counsel for the Defendants indicated that Defendants would likely be filing a motion to withdraw the reference to the Bankruptcy Court.  Judge Bardwil ordered that Defendants file the motion to withdraw the reference by May 12, 2014, and stayed the adversary proceeding pending this Court's ruling on the motion.

## III. WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING TO THE BANKRUPCY COURT IS NEITHER REQUIRED NOR APPROPRIATE

**A.    Legal Standard For Withdrawal**

Jurisdiction over bankruptcy proceedings is vested in the District Court.  However, bankruptcy proceedings may be referred to the Bankruptcy Court for the district.  *See* 28 U.S.C. §§ 1334 (a), 157(a); *see also* E.D. Cal. Gen. Order No. 223.  District courts are authorized to withdraw the reference of the bankruptcy case or proceeding.  28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

As recognized by (now Senior) Judge Ishii of this District, 28 U.S.C. § 157(d) "contains two distinct provisions: the first sentence [for cause shown] allows permissive withdrawal, while the second sentence [U.S. laws affecting interstate commerce] requires mandatory withdrawal in certain situations.  The burden of demonstrating both mandatory and discretionary withdrawal is on the movant." *Stratton v. Garcia,* 2007 U.S. Dist. LEXIS 14434, 3-4 (E.D. Cal. Feb. 9, 2007) (internal citations omitted).

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

1
**B.      Withdrawal Of The Reference Is Not Mandatory**

2
Defendants assert that withdrawal of the reference in this case is mandatory, claiming that the

3
Bankruptcy Court cannot finally determine the Trustee's claims, and that Defendants will assert their

4
right to a jury trial on the Trustee's claims in the event that their motion to compel arbitration is

5
denied.  See Defendants' Points and Authorities at 12:1.

6
However, Defendants' jury demand does not mandate that the reference be withdrawn.[5]  It is

7
clear that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly

8
give up jurisdiction and that the case must be transferred to the district court.  Instead, the bankruptcy

9
court is permitted to retain jurisdiction over the action for pre-trial matters."  *Sigma Micro Corp. v.*

10
*Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007) (internal citation

11
omitted) (hereinafter "*Healthcentral.com*").  In *Healthcentral.com*, the Ninth Circuit determined that a

12
bankruptcy court may rule on dispositive motions in advance of a trial because these rulings "merely

13
address whether trial is necessary at all" and do not implicate the party's Seventh Amendment jury trial

14
rights.  *Id at 787.*  Further, the "bankruptcy court's pre-trial management will likely include matters of

15
'discovery,' 'pre-trial conferences,' and routine 'motions,' which obviously do not diminish a party's

16
*right* to a jury trial."  *Ibid.* (emphasis in original; internal citations omitted).

17
*Healthcentral.com* also explains that "requiring that an action be immediately transferred to

18
district court simply because of a jury trial right would run counter to our bankruptcy system."  *Id.* at

19
787.  This is because judicial economy and efficiency are served by leaving matters with the

20
bankruptcy court to the fullest extent possible, thereby "making use of the bankruptcy court's unique

21
knowledge of Title 11 and familiarity with the actions before them."  *Id.* at 787-88.  The

22
*Healthcentral.com* court reasoned:

23
> [I]f we were to require an action's immediate transfer to district court

24
> simply because there is a jury trial right we would effectively subvert
> this system.  Only by allowing the bankruptcy court to retain jurisdiction

25
> over the action until trial is actually ready do we ensure that our
> bankruptcy system is carried out.

26

27

28
[5] The Trustee does not concede that Defendants have a right to a jury trial – as will be seen below, Defendants have waived that right – but even if the jury trial right had not been waived, withdrawing the reference is not mandatory.

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

1    *Id.* (internal citations omitted).

2         Defendants cite no law to the contrary, and the Trustee is aware of none.

3         Defendants also claim that withdrawal of the reference is mandatory because "the Trustee's

4    complaint is premised entirely on alleged violations of the California Rules of Professional Conduct

5    and duties established by common law.  The complaint is devoid of any issue implicating federal

6    bankruptcy law."  See Defendants' Points and Authorities at 7:4-7.  That assertion is patently false.

7    Defendants' blatant attempt to mislead this Court is shocking.

8         As this Court is well aware, 28 U.S.C. § 157(b)(2) contains a (non-exclusive) listing of

9    examples of core bankruptcy proceedings, including:

10        (A) matters concerning the administration of the estate;
     (B) allowance or disallowance of claims against the estate or exemptions from property of the
11        estate, and estimation of claims or interests for the purposes of confirming a plan under chapter
     11, 12, or 13 of title 11...
12        (E) orders to turn over property of the estate;
     (F) proceedings to determine, avoid, or recover preferences; and
13        (H) proceedings to determine, avoid, or recover fraudulent conveyances

14        As noted above, the Trustee's First Amended Complaint includes causes of action for objection

15   to Defendants' Proof of Claim, for an order requiring Defendants to turn over tangible property of the

16   estate, and to recover certain payments made to Defendants as fraudulent and/or preferential transfers.

17   These are all "core" proceedings, which "arise under" the Bankruptcy Code, and thus quite clearly

18   "implicate federal bankruptcy law," contrary to Defendants' moving papers.  However, they are not

19   "laws of the United States regulating organizations or activities affecting interstate commerce" such

20   that withdrawal of the reference is mandatory.

21        Once again we can turn to Judge Ishii, who noted that "the Ninth Circuit has stated in dictum

22   that mandatory withdrawal of the reference hinged 'on the presence of substantial and material

23   questions of federal law.'  *Security Farms v. International Bd. of Teamsters (In re Security*

24   *Farms)*, 124 F.3d 999, 1008 n.4 (9th Cir. 1997)."  *Stratton v. Garcia, supra,* 2007 U.S. Dist. LEXIS

25   14434 at p. 4.  Similarly, (now Senior) Judge Shubb expanded upon Judge Ishii's guidance.  Citing

26   *Stratton*, Judge Shubb held that "[t]he mandatory withdrawal provision **should be construed**

27   **narrowly** to avoid creating an 'escape hatch' by which bankruptcy matters could easily be removed to

28   the district court."  *Janssen v. Hirsch (In re Creekside Vineyards, Inc.),* 2009 U.S. Dist. LEXIS 96560,

8

1   11-12 (E.D. Cal. Oct. 16, 2009) (quoting *In re Vicars*, 96 F.3d 949, 953 (7th Cir. 1996)) (emphasis

2   added).  Judge Shubb noted that "the issues in question [should] require more than the mere

3   application of well-settled . . . non-bankruptcy law."  *Id.*

4         As to the claims for breach of fiduciary duty and negligence, etc., withdrawal is not mandatory

5   since these claims clearly do not require "the interpretation of federal laws regulating organizations or

6   activities affecting interstate commerce."  *Janssen v. Hirsch, supra,* 2009 U.S. Dist. LEXIS 96560 at p.

7   12 (quoting *In re Roman Catholic Bishop of San Diego*, 2007 U.S. Dist. LEXIS 60954, at  p. 3 (S.D.

8   Cal. Aug. 20, 2007)).  Instead, such claims at most require "the mere application of well-settled . . .

9   non-bankruptcy law," which is fully within the capabilities of the Bankruptcy Court.  *Ibid.*  In fact, as

10  mentioned above, the Bankruptcy Court has already found that Defendants violated numerous ethical

11  and professional duties owed to the Debtors, and that finding was upheld on appeal.  The Trustee's

12  current claims are simply the logical extension of rulings **previously made by the Bankruptcy Court**

13  **in this proceeding**.

14  **C.**    **Defendants Have Not Shown Good Cause For Permissive Withdrawal**

15        Perhaps recognizing they cannot meet the requirements for a mandatory withdrawal,

16  Defendants spend the majority of their moving papers arguing that the Court should exercise its

17  discretion to withdraw the reference.  As would be expected, courts have fairly broad discretion to

18  determine whether a movant has demonstrated "cause" for permissive withdrawal of the reference, but

19  there are numerous authorities which outline the factors that the court should consider when making

20  this determination.  Both case law and the straightforward application of these factors point to the

21  denial of Defendants' motion.

22        When determining a motion to withdraw a reference, the Court should first determine whether

23  the claim is core or non-core, "since it is upon this issue that questions of efficiency and uniformity

24  will turn."  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993).  Where "non-core" actions

25  predominate, permissive withdrawal of the reference may be appropriate.  *In re Security Farms, supra*,

26  124 F.3d at 1008.  But that is not the situation here.

27        As noted above, the causes of action for objection to the Defendants' Proof of Claim, for an

28  order requiring Defendants to turn over tangible property of the estate, and to recover certain payments

1  made to Defendants as fraudulent and/or preferential transfers, **are core proceedings**.  28 U.S.C. §

2  157(b)(2).  Additionally, in the present circumstance, the entirety of the Trustee's complaint is a core

3  proceeding since it is a claim by the estate against Defendants who have filed a proof of claim against

4  the estate.  28 U.S.C. § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against

5  the estate" are core proceedings).

6       Defendants correctly note that the fact that an action may be labeled a "core" proceeding by 28

7  U.S.C. § 157(b)(2) does not end the inquiry.  The Court should also consider whether the Bankruptcy

8  Court can render a final judgment in the adversary action, or whether only a recommendation may be

9  issued.  This is because the Bankruptcy Court may not enter final judgments in non-core matters absent

10  consent of the parties, and its findings of fact and conclusions of law are subject to *de novo* review by

11  the District Court.  *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159,

12  161 (9th Cir. 1986); *but see In re Orion, supra,* 4 F.3d at 1101-02 (observing that a District Court may

13  decline to withdraw the reference in a non-core matter because a case is unlikely to reach trial, will

14  require protracted discovery and court oversight before trial, or the jury demand is without merit).  In

15  core matters, the Bankruptcy Court may enter final judgments; and "hearing core matters in a district

16  court could be an inefficient allocation of judicial resources given that the bankruptcy court generally

17  will be more familiar with the facts and issues." *In re Orion, supra,* 4 F.3d at 1101.

18      **1.**    ***Stern v. Marshall* Does Not Support Defendants' Motion To Withdraw The
19  Reference**

20       A proceeding to "determine, avoid, or recover fraudulent conveyances" is a "core" bankruptcy

21  proceeding, and the Bankruptcy Court is presumptively the more efficient forum to resolve a

22  fraudulent conveyance claim.  28 U.S.C. § 157(b)(2)(H).  It must be noted, however, that despite being

23  designated as "core" by 28 U.S.C. § 157(b)(2), the Supreme Court has recently held that Bankruptcy

24  Courts lack constitutional authority to render a final judgment in one particular category of

25  proceedings, namely a debtor's state-law counterclaim that is not resolved in the process of ruling on

26  the creditor's proof of claim.  *See Stern v. Marshall*, 564 U.S. ___, 131 S.Ct. 2594, 2608 (2011).

27       Defendants overstate the holding in *Stern* and assert that the Trustee cannot avoid "the

28  consequences" of that decision.  Defendants' Points and Authorities, at 8:21.  However, Defendants

1  have misinterpreted *Stern*, which Chief Justice Roberts made clear "does not change all that much...."

2  *Stern, supra*, 564 U.S. __, 131 S.Ct. at 2620.

3      *Stern* confirms that under the Bankruptcy Code, there are three categories of bankruptcy

4  proceedings, namely those that arise under Title 11, those that arise in a Title 11 case, and those that

5  are related to a case under Title 11. *Stern, supra,* 564 U.S.___, 131 S.Ct. at 2603.  The Bankruptcy

6  Code permits a Bankruptcy Court to consider and enter a final judgment in each of those three

7  categories of cases, which judgment can be appealed to the district court.

8      The question presented in *Stern* was referred to as a "narrow" one and the Supreme Court's

9  holding was therefore also narrow. *Stern, supra,* 564 U.S.___, 131 S.Ct. at 2620.  The Court held only

10  that the district court is required to review *de novo* and enter final judgment on any matters that are

11  merely "related to" bankruptcy proceedings under Title 11.  Although allowed to do so by statute,

12  "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state

13  law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Ibid.*

14  Thus, the *Stern* decision did not disturb the bankruptcy court's ability to finally decide claims that arise

15  under Title 11, arise in a Title 11 bankruptcy case, or are related to a bankruptcy proceeding and are

16  resolved in the process of ruling on a creditor's proof of claim.

17      Further, as our Supreme Court has stated, **he who invokes the aid of the bankruptcy court**

18  **by offering a proof of claim and demanding its allowance must abide the consequences of that**

19  **procedure**." *Katchen v. Landy*, 382 U.S. 323, 333 (1966) (emphasis added).  As *Stern v. Marshall*

20  makes clear, "[i]n *Katchen* one of those consequences was resolution of the preference issue as part of

21  the process of allowing or disallowing claims, and accordingly there was no basis for the creditor to

22  insist that the issue be resolved in an Article III court." *Stern, supra,* 564 U.S.___, 131 S.Ct. at 2616

23  (internal citation omitted).  Defendants do not address *Katchen*, or *Stern's* commentary on that case, in

24  their moving papers.  The omission is telling, and fatal to the Defendants' motion.

25      *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam), is "to the same effect.  We

26  explained there that a preferential transfer claim can be heard in bankruptcy when the allegedly favored

27  creditor has filed a claim, because then 'the ensuing preference action by the trustee become[s] integral

28  to the restructuring of the debtor-creditor relationship.'" *Stern, supra* 564 U.S.___, 131 S.Ct. at 2617.

Significantly, *Langencamp* dealt squarely with the question of whether a party who filed a proof of claim in a bankruptcy court retains a right to a jury trial:

> "In *Granfinanciera* [*S. A.* v. *Nordberg*, 492 U.S. 33] we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," **thereby subjecting himself to the bankruptcy court's equitable power.** 492 U.S. at 58-59, and n.14 (citing *Katchen, supra,* at 336). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process **which is triable only in equity.** *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. *Granfinanciera, supra,* at 57-58. As such, **there is no Seventh Amendment right to a jury trial**.

*Langenkamp, supra,* 498 U.S. at 44-45 (emphasis added).

As with *Katchen,* Defendants fail to address *Langenkamp* and the impact of the proof of claim on their right to trial by jury.

*Stern v. Marshall* did not change this longstanding rule. In fact, *Stern* went to great lengths to factually distinguish that case from prior precedent:

> In both *Katchen* and *Langenkamp,* moreover, **the trustee bringing the preference action was asserting a right of recovery created by federal bankruptcy law.** In *Langenkamp,* we noted that "the trustee instituted adversary proceedings under 11 U.S.C. § 547(b) to recover, as avoidable preferences," payments respondents received from the debtor before the bankruptcy filings. In *Katchen,* "[t]he Trustee . . . [asserted] that the payments made [to the creditor] were preferences inhibited by Section 60a of the Bankruptcy Act." Vickie's claim, in contrast, **is in no way derived from or dependent upon bankruptcy law**; it is a state tort action that exists without regard to any bankruptcy proceeding.

*Stern, supra,* 564 U.S.___, 131 S.Ct. at 2618 (emphasis added; citations omitted).

Clearly Defendants' proof of claim, and the Trustee's objection thereto and preference claims, are to be tried in equity by the bankruptcy court. It is thus significant that the Trustee's damages claims against the Defendants, which stem from their breaches of ethical and fiduciary duties, conflicted representation of multiple parties and negligence, **are based on the same nucleus of facts** as Trustee's objection to the Defendants' proof of claim, and the preferential/fraudulent transfer claims.

For example, in order to determine whether Defendants are entitled to recover unpaid fees on their proof of claim, the Bankruptcy Court must first determine whether Defendants complied with

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

their duties to the debtors.[6] If the Bankruptcy Court determines that Defendants did not comply with their duties, that Court must decide whether and on what basis damages should be awarded to the Trustee before it can determine whether Defendants are entitled to indemnity for any damages that may be awarded against them, as demanded by their proof of claim.

### 2.    Defendants Have Waived Their Right To A Jury Trial

Thus, the present case presents the converse from the situation in *Stern v. Marshall.* This a case where the factual and legal determinations relevant to the Trustee's claims will be "resolved in the process of ruling on a creditor's proof of claim" such that it is appropriate for the bankruptcy court to hear and decide the entire action. *Stern, supra,* 564 U.S.___, 131 S.Ct. at 2620. Further, the Bankruptcy Court will make these determinations without a jury, since Defendants have waived their right to a jury.   Courts considering a defendant's right to a jury trial after *Stern* still find the right is waived by filing a proof of claim.[7] They cite to "the holdings of *Granfinancera* and *Langenkamp* [which] make clear that defendants in fraudulent and preferential transfer actions are generally not entitled to a jury trial if they are claims-filing creditors in the bankruptcy case…" *O'Cheskey v. Koehler (In re Am. Hous. Found.,* 2013 Bankr. LEXIS 774, at 16 (Bankr. N.D. Tex. Mar. 1, 2013). "Under *Langenkamp,* the fraudulent transfer claim [is] subject to 'the equitable jurisdiction of the bankruptcy court' when the defendant filed a proof of claim against the bankruptcy estate… a proof of claim 'extinguishes' the right to a jury trial … *Stern* does nothing to change this result." *U.S. Bank Nat'l Ass'n v. Verizon Communications, Inc.,* 2012 U.S. Dist. Lexis 103900, at 8-9 (N.D. Tex. July 25, 2012) (internal citations omitted).  Put in its most simple terms, "there is no Seventh Amendment right to a jury trial for defendants who had filed proofs of claim in the underlying bankruptcy action." *In re Appalachian Fuels, LLC* 472 B.R. 731, 747 (E.D. Ky. 2012).

---

[6] In this case, the Bankruptcy Court has already found that Defendants violated several ethical duties to the debtors, and those findings were affirmed by Judge Karlton.  Those rulings are conclusive upon the Defendants and also sufficient evidence, in and of themselves, to establish malpractice.  *Day v. Rosenthal,* 170 Cal. App. 3d 1125, 1149 (1985).

[7] Defendants also rely on an Order by (now Chief) Judge England withdrawing the reference in *Sharp v. Perry,* 2:11-cv-03210. However, in that case the Trustee did not dispute Perry's right to a jury trial as Perry did not file a proof of claim.  Although Defendants continually try to ignore its impact, "the proof of claim changes everything." *Locke v. Cottman Transmission Sys., LLC (In re Kund LLC),* 2010 Bankr. LEXIS 133, 1-2 (Bankr. N.D. Cal. Jan. 15, 2010).

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

**D.   Other Jurisprudential Factors Also Support Denial Of Defendants' Motion To Withdraw The Reference**

Even where, as here, the Bankruptcy Court may hear and finally decide the Trustee's claims, in determining whether to exercise its discretion to withdraw the reference, courts in the Ninth Circuit will look to the following factors: 1) efficient use of judicial resources; 2) delay and costs to the parties; 3) uniformity of bankruptcy administration; 4) the prevention of forum shopping; and 5) other related factors. *See In re Security Farms*, *supra*, 124 F.3d at 1008. The factors, discussed in detail below, demonstrate that good cause to withdraw the reference is not present, and withdrawing the reference is not appropriate here.

**1.   Efficient Use of Resources, And Delay And Cost To The Parties**

Clearly, where the Bankruptcy Court is authorized to finally decide the Trustee's core claims and the Defendants' proof of claim, and where the Bankruptcy Court has already heard and decided some issues related to the Defendants' breaches of duties owed to the debtors, the most efficient use of available resources would be to permit the Bankruptcy Court to finish its work.

Even in cases where the Bankruptcy Court cannot render a final decision, efficiency arguments weigh strongly in favor of declining to withdraw the reference. For example, in *Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*, 464 B.R. 348, 358 (N.D. Cal. 2011) (hereinafter "*Heller Ehrman*") the District Court denied a motion to withdraw the reference with respect to fraudulent conveyance claims because, among other reasons, judicial efficiency was served by leaving the actions with the bankruptcy court. This was because the bankruptcy court's familiarity with the facts and the legal issues underlying the claims, and the Supreme Court's mandate in *Stern* that the "division of labor" between bankruptcy courts and district courts was not meaningfully changed by that decision, counseled in favor of denying the motion to withdraw the reference. *Id.* at 357-59. Further, it was not certain that the cases would even reach the point of dispositive motion or trial. *Id.* at 358. In denying the motion to withdraw the reference, *Heller Ehrman* concluded that the bankruptcy court was the proper forum to dispose of all pre-trial matters and that, "[w]ithdrawal at this point would forego the services of a bankruptcy court ready, willing and able to do its job." *Id.*

Many other courts have come to the same conclusion.  Where, as here, the bankruptcy proceeding has been pending for several years, and numerous adversary proceedings have been filed, "it is more efficient for the bankruptcy court to make decisions in the first instance even though these findings may be subject to de novo review."  *In re EPD Inv. Co. LLC*, 2013 U.S. Dist. LEXIS 136894, 15 (C.D. Cal. Sept. 24, 2013).  "Withdrawal of reference at this stage would result in this court losing the benefit of the bankruptcy court's experience in both the law and facts, resulting in an inefficient allocation of judicial resources."  *Field v. Lindell (In re Mortgage Store, Inc.)*, 464 B.R. 421, 429 (D. Haw. 2011).

Like the circumstances in *Heller Ehrman, EPD* and *Field*, the SK Foods bankruptcy case has been ongoing in the Bankruptcy Court for a long time (over five years).  Judge Bardwil has presided over approximately eighty avoidance actions in the SK Foods case alone, as well as numerous other proceedings stating claims under Title 11.  The Bankruptcy Court has presided over fraudulent conveyance actions initiated by the Trustee against criminal defense attorneys for former SK Foods officers who were paid by SK Foods, and has approved the settlement of those actions.  Defendants previously appeared adverse to SK Foods before the Bankruptcy Court, on behalf of various Salyer affiliated entities, despite asserting that their work conferred a benefit on SK Foods in their proof of claim.

In sum, withdrawal of the reference at this point will require that this Court expend a significant amount of time absorbing the complex history of this five-year old bankruptcy case and the Defendants' roles in engaging in conduct harmful to the Debtors.  By contrast, the Bankruptcy Court is already well versed in these matters.  Since withdrawal of the reference at this stage is not the most efficient use of judicial resources, withdrawal now would also increase the costs to the parties, and likely delay resolution of the dispute.  Defendants' motion should be denied.

### 2.    Uniformity Of Bankruptcy Administration

The policy in favor of the uniform administration of bankruptcy matters also weighs strongly in favor of leaving this proceeding with the Bankruptcy Court.  This is because the Trustee's claims arise under federal bankruptcy law and the Bankruptcy Court has already rendered numerous such decisions in the SK Foods bankruptcy case.  In *Heller Erhman*, the Court determined that it was inappropriate to

withdraw the reference because the debtor's claims "would not exist but for the bankruptcy" and, where the case had proceeded for several years before the bankruptcy court, withdrawing the reference might "undermine the uniform administration of bankruptcy proceedings." *In re Heller Ehrman, supra*, 464 B.R. at 360.

In fact, the uniform administration of bankruptcy proceedings is one of the central purposes of the Bankruptcy Code. Those purposes "include '[c]entralization of disputes concerning a debtor's legal obligations' and 'protect[ing] creditors and reorganizing debtors from piecemeal litigation.'" *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1022 (9th Cir. 2012) (internal citations omitted). As Chief Judge England held earlier this year in a similar situation, permitting the Bankruptcy Court to continue its work in this case is the best way to ensure the uniformity of administration in the SK Foods bankruptcy. *See Bell v. Lehr*, 2014 U.S. Dist. LEXIS 15837, 7-8 (E.D. Cal. Feb. 6, 2014) ("to ensure uniformity in this matter and to expedite proceedings … this Court finds that efficiency and judicial economy demand that the Bankruptcy Court continue to handle all pretrial matters, including discovery and the adjudication of dispositive motions….")

### 3.   Prevention Of Forum Shopping

A motion to withdraw the reference is inherently a request for a different forum, and Defendants have certainly made their preference clear. However, Defendants' mere preference cannot alter the appropriate "division of labor" between the Bankruptcy Court and the District Court upheld by the Supreme Court in *Stern v. Marshall*. Given the present posture of the case, the Bankruptcy Court is the appropriate forum.

### E.   Even If This Court Considers Withdrawing The Reference For Trial, The Bankruptcy Court Should Retain Jurisdiction Of All Pre-Trial Proceedings

Even if this Court were to find that one or more of the Trustee's claims is possibly "non-core" and thus not within the constitutional authority of the Bankruptcy Court to finally decide, the Court can and should defer that decision, and direct the Bankruptcy Court to administer the entirety of the matter until trial is imminent. As Judge Burrell put it recently: Even if "reference to the bankruptcy court ultimately may have to be withdrawn, a district court may exercise its discretion not to withdraw the reference immediately where, for example, the bankruptcy court already is familiar with the relevant

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

1    facts and issues…." *Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin)*, 2012 U.S. Dist. LEXIS

2    99971, at p. 7 (E.D. Cal. July 17, 2012).  In such instance, the Defendants would have the opportunity

3    to renew their motion if and when it appeared the matter would be tried.

4         The Supreme Court has recently confirmed that the Bankruptcy Court may handle the pre-trial

5    aspects even in a non-core adversary matter not involving the filing of a proof of claim by a defendant,

6    and "submit proposed findings of fact and conclusions of law to the District Court to be reviewed *de*

7    *novo.*" *Exec. Benefits Ins. Agency v. Arkison*, __ U.S. __, __ S.Ct.__, 189 L.Ed.2d 83 (U.S. 2014).

8    This Court should follow the Supreme Court's lead here.  At the very least, this Court should direct the

9    Bankruptcy Court to retain jurisdiction over the matter for all pre-trial proceedings, hear and finally

10    decide the propriety of the proof of claim and other "core" proceedings (making the necessary findings

11    of fact in the process), and then (if necessary) submit proposed findings of fact and conclusions of law

12    for any non-core issues that are not "resolved in the process of ruling on [Defendants'] proof of claim."

13    *Stern, supra,* 564 U.S.___, 131 S.Ct. at 2620.

14                                 **IV. CONCLUSION**

15         The Bankruptcy Court has both the statutory and constitutional authority to finally decide the

16    entirety of the Trustee's claims against Defendants, who have submitted a proof of claim in this

17    bankruptcy proceeding.  The claims herein arise out of the Bankruptcy Code, and will be resolved by

18    the Bankruptcy Court when ruling on Defendants' proof of claim.  The Bankruptcy Court is familiar

19    with the unique facts of this Chapter 11 case, and has already made binding findings of fact which will

20    be highly relevant to its determination of the validity of Defendants' proof of claim and the Trustee's

21    related claims.

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

1    For the foregoing reasons, the Trustee respectfully requests that this Court deny Defendant's

2  Motion to Withdraw the Reference.

3

4  Dated:  June 27, 2014                          BOWLES & VERNA LLP

5

6                                                 By: /S/ _____
                                                      RICHARD T. BOWLES
7                                                     DAVID W. TROTTER
                                                      JASON J. GRANSKOG
8                                                     Attorneys for Plaintiff and Chapter 11
                                                      Trustee Bradley D. Sharp
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE