1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   In re SK FOODS, L.P., et al.,              No.: 2:14-cv-1169-KJM-AC

12              Debtor,

13   BRADLEY D. SHARP, as Chapter 11            ORDER
     Trustee of SK Foods, L.P.,
14
                Plaintiff,
15
          v.
16
     KASOWITZ, BENSON, TORRES &
17   FRIEDMAN, LLP, et al.,

18              Defendants.

19

20              On July 11, 2014, the court heard argument on the motion to withdraw the

21   reference from the United States Bankruptcy Court[1] filed by defendants Kasowitz, Benson,

22   Torres & Friedman LLP and Donald Putterman (collectively KBTF).  Richard Bowles and Jason

23   Granskog appeared for plaintiff Bradley Sharp, the Chapter 11 Trustee for SK Foods, LP and

24   related entities (collectively debtors); Bradley Zamczyk appeared for KBTF.  After considering

25   the parties' arguments, the court  DENIES the motion.

26

27              [1] The case number of the adversary proceeding before the bankruptcy court is 14-02025-D
     and the underlying bankruptcy case number is 09-29162-D-11.  The court will refer to
28   documents from those cases as Adversary Docket and Bankruptcy Docket respectively.

                                                 1

1  I. <u>REQUEST FOR JUDICIAL NOTICE</u>

2          The Trustee has asked the court to take judicial notice of the First Amended

3  Complaint (FAC) in the adversary proceeding; KBTF's claim in the bankruptcy; the judgment in

4  Adversary Proceeding No. 10-02014, granting the Trustee's request to consolidate the assets of

5  various SK Foods subsidiaries into the debtors' estate.  He has provided copies of those

6  documents.  Trustee's Req. for Judicial Notice (RFJN, ECF No. 5).  This request is granted.  *See*

7  *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (stating a court may take judicial notice of

8  proceedings in other courts if the proceedings have a direct relation to matters at issue).

9          The Trustee also asks the court to take judicial notice of Bankruptcy Judge

10  Bardwil's order of October 16, 2009 filed in the bankruptcy case, disqualifying KBTF from

11  representing parties to the bankruptcy proceeding, Bankruptcy Docket Nos. 865 & 866, and the

12  order issued by District Judge Karlton in *SSC Farming LLC, et al. v. SK Foods, LP, et al.,* Civ.

13  No. S-09-2988 LKK, Docket No. 16, affirming Judge Bardwil's order on appeal.  The Trustee has

14  not attached copies of these orders, explaining they were filed under seal to protect privileged

15  matters.  ECF No. 5 at 2; Opp'n to Mot. To Withdraw, ECF No. 3 at 5-6.  He argues that the

16  privilege has been waived by the adversary complaint and KBTF's claim and also suggests that

17  this court has access to the documents under Local Rule 141(a) (providing that authorized court

18  personnel have access to sealed documents).  The court declines to seek out the documents for

19  itself and declines to determine whether any privilege has been waived.  Although the Trustee has

20  unsuccessfully sought KBTF's stipulation to unseal the orders, he has not asked the issuing courts

21  to unseal the documents nor has the Trustee provided copies of them under seal to this court.

22          KBTF has also asked the court to take judicial notice of two documents, the First

23  Amended Complaint in the adversary proceedings and an order filed June 13, 2012 in another

24  case in this district, *Sharp v. Perry*, No. 2:11-cv-3210 (granting a motion to withdraw the

25  reference).  Although KBTF refers to an accompanying request, it has not filed such a document

26  in the district court or in the adversary proceeding.  The court declines to take judicial notice of

27  the documents KBTF has not provided.

28  /////

2

1    II.      BRIEF INTRODUCTION AND PROCEDURAL BACKGROUND

2              This case is part of the lengthy unraveling of SK Foods, a Central Valley

3    agribusiness company, and its many affiliated companies, which generated not only the

4    underlying bankruptcy proceedings but also the investigation and criminal prosecution of Scott

5    Salyer, the owner of SK Foods.

6              According to the First Amended Complaint in the adversary proceeding, debtors

7    SK Foods and RHM were processors of tomato products and before the bankruptcy were owned

8    and controlled by Salyer, who was CEO and a director of SK Foods.  FAC, Adversary Docket

9    No. 11 ¶¶ 19, 20.  Salyer also owned and controlled, either directly or indirectly, many other

10   affiliated entities, informally referred to as "Salyer Enterprises" or "SK Foods Group."  *Id*. ¶¶ 20,

11   22.  In 2009, when the debtors' primary lender, Bank of Montreal (BMO), declared debtors were

12   in default under the terms of their credit agreement, Salyer hired KBTF and KBTF partner

13   Putterman on behalf of "Salyer Enterprises," to represent debtors in negotiations with BMO and

14   other lenders.  *Id*. ¶¶ 25, 29-30.  KBTF never advised the debtors that it was representing multiple

15   entities with conflicting interests and in fact took actions to benefit Salyer and certain of the

16   affiliates to debtors' detriment.  *Id*. ¶ 31.

17             On May 5, 2009, BMO filed involuntary Chapter 11 bankruptcy petitions against

18   the debtors.  *Id*. ¶ 40.  Two days later, debtors filed a voluntary petition and asked for the

19   appointment of a trustee.  *Id*.

20             As the result of KBTF's actions on behalf of some of the affiliates, the Trustee was

21   compelled to settle some disputes adversely to the debtors' interests.  *Id*. ¶¶ 41, 43.  He thereafter

22   sought to disqualify KBTF based on its conflicted representation of the debtors and some of the

23   affiliates.  *Id*. ¶ 46.  The bankruptcy court granted the motion, which as noted was upheld on

24   appeal to the district court.  *Id*. ¶¶ 48-49.

25             On January 21, 2014, the Trustee filed an original complaint in this adversary

26   proceeding and demanded a jury trial.  Adversary Docket No. 1.

27             On February 4, 2014, KBTF filed a claim for $451,539.23 for legal services in the

28   bankruptcy action.  RFJN, ECF No. 5-3 at 1-12.  In the attachment to the claim, KBTF says it

1   "performed professional legal services" for Salyer Enterprises, described as the Consolidated

2   Entities, under a 2009 retention agreement.  RFJN, ECF No. 5-3 at 4.  It continues that even

3   though Salyer agreed to pay for the services and costs, KBTF has received only partial payment.

4   *Id*.  It says under a "consolidation judgment" entered by the bankruptcy court on October 4, 2013,

5   the consolidated entities are considered to have filed bankruptcy petitions as of May 5, 2009 (the

6   "deemed petition date").  *Id*.  "All of the Unpaid Fee Claim was incurred after the Deemed

7   Petition Date.  Accordingly, KBT&F asserts an administrative priority under 11 U.S.C. §§ 503(b)

8   and 507(a) for the Unpaid Fee Claim."  *Id*.  KBTF also attached a copy of the retention letter, in

9   which it said Salyer was retaining them "in connection with matters concerning the Bank of

10   Montreal, Bank of America, Wells Fargo Bank, Bank of the West and U.S. Bank, and such other

11   matters for which you may request our services in the future."  ECF No. 5-3 at 9.

12       The Trustee filed the First Amended Complaint on February 14, 2014.  It

13   comprises seven claims:  (1) breach of fiduciary duty; (2) legal malpractice; (3) objection to the

14   proof of claim; (4) avoid and recover fraudulent transfers, 11 U.S.C. §§ 548 & 550; (5) avoid and

15   recover preferential transfers, 11 U.S.C. §§ 547 & 550; (6) recover property of the new debtor

16   entities,[2] 11 U.S.C. § 542; (7) imposition of a constructive trust.  FAC ¶¶ 53-115.  The Trustee

17   alleges KBTF did not inform the debtors it was representing multiple entities with conflicting

18   interests and took actions that assisted Salyer and certain of the entities to the detriment of

19   debtors' interests.  *Id*. ¶ 32.  It provided advice to debtors regarding the bankruptcy and

20   negotiations with creditors at the same time it planned to delay a sale of debtors' assets in order to

21   benefit Salyer.  *Id*. ¶¶ 33-34.  As a result, when the Trustee was appointed, he was compelled to

22   conduct a "fire sale" of debtors' assets.  *Id*. ¶ 41.  The Trustee has demanded a jury trial.

23       KBTF filed the instant motion on May 12, 2014.  ECF No. 1.  The Trustee has

24   opposed the motion and KBTF has filed a reply.  ECF Nos. 3 & 6.

25

---

26   [2] The "new debtor entities" are SK PM Corporation; SK Foods, LLC; SKF Canning, LLC;
Blackstone Ranch Corporation; Salyer Management Corporation, LLC; Monterey Peninsula
27   Farming, LLC; SK Farms Services, LLC; SSC Farming, LLC; SSC Farms I, LLC; SSC Farms II,
LLC; and SS Farms, LLC.  Judge Bardwil granted the Trustee's request to consolidate all assets
28   and property held by these affiliates.  FAC ¶ 7.

4

III. <u>LEGAL STANDARD</u>

District courts have original jurisdiction over all bankruptcy matters.  28 U.S.C. § 1334(b).  In this district, the district courts refer all such matters to a bankruptcy court under 28 U.S.C. § 157(b).  *See* Gen. Orders 182 (1985) and 223 (1987).  Under § 157(d), a district court has the power to withdraw a referred case from a bankruptcy court.  Withdrawal can be mandatory or permissive.  *Id.*  Withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  *Id.*  Where withdrawal of reference is not mandatory, a "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . for cause shown."  *Id.*   KBTF does not argue withdrawal is mandatory under § 157(d).

In determining whether there is cause to withdraw the reference under the permissive portion of § 157(d), courts consider the following factors: "(1) the efficient use of judicial resources, (2) delay and costs to the parties, (3) uniformity of bankruptcy administration, (4) the prevention of forum shopping, (5) and other related factors."  *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993)).  Before considering these factors, courts must first "evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."  *In re Orion Pictures Corp.*, 4 F.3d at 1101.

A.  Core or Non-Core?

In the First Amended Complaint, the Trustee characterizes the action as a "core adversary proceeding."  FAC ¶ 1.  Section 157(b) provides a non-exhaustive list of core proceedings, which "include matters affecting the administration of the estate, determination of the validity, extent, or priority of liens, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship."  *Battle Grd. Plaza v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010).  Non-core proceedings, on the other hand, "do not

/////

1   depend on the Bankruptcy Code for their existence and . . . could proceed in another court." *Id*.

2   (internal quotation omitted).

3       KBTF argues this distinction has been muddied by the Supreme Court's decision

4   in *Stern v. Marshall* and argues that withdrawal is now essentially mandatory because the

5   bankruptcy court cannot conduct a jury trial or enter final judgment on the trustee's claims.

6   __ U.S. __, 131 S. Ct. 2594 (2011).  It contends that the bankruptcy court cannot enter judgment

7   on the state law claims and the bankruptcy claims are simply restatements of the state law claims,

8   similarly out of the bankruptcy court's ultimate authority.

9       The Trustee counters that *Stern* has little application because KBTF has subjected

10  itself to the bankruptcy court's equitable jurisdiction and waived its right to a jury trial by

11  submitting a claim in the bankruptcy case.  In reply KBTF contends that its defensive claim does

12  not operate as a waiver.

13      The Supreme Court characterized the questions it decided in  *Stern* as "narrow"

14  and suggested the decision might not "change all that much . . ." in bankruptcy practice.  *Id*. at

15  2620.  The lower courts have split in their interpretation, some taking the Supreme Court at its

16  word and construing *Stern* narrowly to remove the bankruptcy court's ability to reach a final

17  judgment over a debtor's state law counterclaims only, while others read the decision broadly to

18  cover actions "which seek to augment the estate."  *Burtch v. Seaport Capital, LLC (In re Direct*

19  *Response Media, Inc*.), 466 B.R. 626, 640-44 (Bkrpty. D. Del. 2012) (discussing both

20  approaches); *see also Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP*),

21  464 B.R. 348, 352-53 (N.D. Cal. 2011) (discussing *Stern*'s reach).  Most recently, in *Dietz v.*

22  *Ford*, the Ninth Circuit suggested it was taking the Supreme Court at its word and interpreting

23  *Stern* narrowly.  760 F.3d 1038, 1045 (9th Cir. 2014) (attaching BAP order as appendix).  In

24  *Dietz*, the court rejected a challenge to the bankruptcy court's authority to decide questions of

25  dischargeability.  *Id*. at 1045-46.  Without ultimately resolving all the permutations and the

26  ultimate reach of *Stern*, the Circuit concluded that the bankruptcy court may finally resolve the

27  issues in an adversary proceeding, a factor that undercuts withdrawal of the reference.

28  /////

1          The facts leading to the Supreme Court's decision in *Stern* are these:  After

2 J. Howard Marshall died without leaving anything to his third wife, Vickie, she filed suit in Texas

3 probate court alleging her stepson Pierce had fraudulently induced J. Howard to renege on his

4 intention to provide half of his sizable estate to Vickie.[3]  There was additional litigation:  Vickie

5 filed a petition for bankruptcy in the Central District of California and Pierce filed a complaint in

6 the bankruptcy proceeding, contending Vickie had defamed him in statements about his pursuit of

7 J. Howard's estate and seeking a declaration that the defamation claim was not dischargeable.

8 Vickie responded to this complaint by asserting truth as a defense to the defamation claim and

9 filing a counterclaim for tortious interference with the gift she had expected from J. Howard.  *Id.*

10 at 2601.  Pierce also filed a claim based on the defamation against the bankruptcy estate, but the

11 Supreme Court decision does not make clear whether it was filed before or after the counterclaim.

12          The bankruptcy court granted Vickie's summary judgment motion on the

13 defamation claim and entered judgment for Vickie on her tortious interference counterclaim after

14 a bench trial.  It rejected Pierce's argument that the counterclaim was not a core proceeding under

15 28 U.S.C. § 157(b)(2)(C) and that the bankruptcy court did not have jurisdiction over it.  *Id.*

16          The Supreme Court defined the two issues before it:  "(1) whether the Bankruptcy

17 Court had the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on Vickie's

18 counterclaim; and (2) if so, whether conferring that authority on the Bankruptcy Court is

19 constitutional?"  *Id.* at 2600.

20          The Court first said that Vickie's counterclaim for tortious interference was a core

21 proceeding under 28 U.S.C. § 157(b)(2)(C), which defines "counterclaims by the estate against

22 persons filing claims against the estate," and the bankruptcy court had statutory authority to enter

23 a final judgment on that counterclaim.  *Id.* at 2604, 2605.  It concluded, however, that the

24 bankruptcy court did not have constitutional authority to enter judgment on the tortious

25 interference claim.  *Id.*  at 2614-19.

26

27          [3] Following the Supreme Court's lead, the court refers to the parties by their first names to avoid confusion, not as a sign of any disrespect.  The case is called *Stern v. Marshall* because Vickie was dead by the time the case returned to the Supreme Court and the litigation was

28 pursued by her executor, Howard Stern.

1    In reaching this conclusion, the Court relied on the plurality decision in *Northern*

2    *Pipeline Construction Company v. Marathon Pipe Line Company*, which had found that allowing

3    bankruptcy judges appointed under the 1978 Bankruptcy Act to decide a state law contract claim

4    brought against a party who was not otherwise part of the bankruptcy proceedings violated

5    Article III.  458 U.S. 50, 56, 88 n.40 (1982) (plurality decision).  It also relied on *Granfinanciera*

6    *S.A. v. Nordberg*, which held that "a person who has not submitted a claim against a bankruptcy

7    estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly

8    fraudulent monetary transfer." 492 U.S. 33, 36 (1989); *Stern*, 131 S. Ct. at 2609-2611, 2614-

9    2614.  *Northern Pipeline* recognized that "legislative" judges could decide cases involving

10   "public rights," but found that the public rights doctrine did not cover the state law contract claim

11   at issue.  458 U.S. at 69-72.  Similarly in *Granfinanciera*, the Court said that despite the

12   designation of a fraudulent conveyance claim as core under 28 U.S.C. § 157(b)(2)(H), if a

13   particular claim "is legal in nature, then it carries with it the Seventh Amendment's guarantee of a

14   jury trial."  492 U.S. at 54-55.  The Court in *Stern* said, "Vickie's claim is a state law action

15   independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the

16   creditor's proof of claim in bankruptcy.  *Northern Pipeline* and our subsequent decision in

17   *Granfinanciera* . . . rejected the application of the 'public rights' exception in such cases."

18   131 S. Ct. 2611.

19   In this case, KBTF says that as the trustee's adversary proceeding seeks to recover

20   legal fees, it is a creature of state law and, under *Stern*, not amenable to final judgment in the

21   bankruptcy court.  The Trustee argues that *Stern* does not require a withdrawal of the reference

22   because this case is controlled by other Supreme Court authority.  In *Katchen v. Landy*, the Court

23   considered "whether a bankruptcy court has summary jurisdiction to order the surrender of

24   avoidable preferences asserted and proved by the trustee in response to a claim filed by the

25   creditor who received the preferences."  382 U.S. 323, 325 (1966).  The Court said that a

26   bankruptcy court has full authority "to allow or disallow claims," including "'full power to

27   inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or

28   claim against the estate is based.'"  *Id*. at 328 (quoting *Lesser v. Gray*, 236 U.S. 70, 74 (1915)).  It

8

1  continued, saying "'[t]he whole process of proof, allowance, and distribution is, shortly speaking,

2  an adjudication of interests claimed in a res.'"  *Id.* at 329 (quoting *Gardner v. State of New*

3  *Jersey*, 329 U.S. 565, 574 (1947)).  And because the Bankruptcy Act forbids the allowance of a

4  claim when the creditor has received preferences, the question of preference must be decided

5  before the claim is allowed or disallowed.  *Id.*

6         In *Langenkamp v. Culp,* the Court considered "whether creditors who submit a

7  claim against a bankruptcy estate and are then sued by the trustee in bankruptcy to recover

8  allegedly preferential monetary transfers are entitled to jury trial under the Seventh Amendment."

9  498 U.S. 42, 42-43 (1991) (per curiam).  The Court said that "by filing a claim against the

10  bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,'

11  thereby subjecting himself to the bankruptcy court's equitable power."  *Id.* at 44 (quoting

12  *Granfinanciera*, 492 U.S. at 58-59).  The claim and the trustee's preference action "become

13  integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's

14  *equity jurisdiction.*"  *Id.* (emphasis in original).  The Court concluded that the creditor's right to

15  jury trial depended on whether the creditor had submitted a claim.  *Id.* at 45.

16         The Court in *Stern* acknowledged *Katchen* and *Langenkamp*, but did not find them

17  controlling even though Pierce had filed a claim.  *Id.* at 2616.  It said that "[i]n ruling on Vickie's

18  counterclaim, the Bankruptcy Court was required to and did make several factual findings that

19  were not 'disposed of in passing on objections' to Pierce's proof of claim for defamation, which

20  the court had denied almost a year earlier," even though there was some overlap between the two.

21  *Id.* at 2617.  The Court also said that "*Granfinanciera*'s distinction between actions that seek 'to

22  augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy res,' *ibid.*,

23  reaffirms that Congress may not by-pass Article III simply because a proceeding may have *some*

24  bearing on a bankruptcy case; the question is whether the action at issue would necessarily be

25  resolved in the claims allowance process."  *Stern*, 131 S. Ct. at 2618 (quoting *Granfinanciera*,

26  492 U.S. at 56).

27         The Ninth Circuit has said that "the only principled basis on which to distinguish

28  *Katchen* from *both Stern* and *Granfinanciera* is that *Katchen* involved a claim against a creditor

9

1   that necessarily had to be resolved in the course of the claims-allowance process, and *Stern* and

2   *Granfinanciera* did not." *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*,

3   702 F.3d 553, 564 (9th Cir. 2012), *aff'd,* 134 U.S. 2165 (2014).

4          KBTF says that whatever the continuing viability of *Katchen* and *Langenkamp*,

5   after *Stern*, those cases do not apply here because KBTF filed its claim after the original

6   adversary complaint was filed.   It cites to *Piombo Corporation v. Castlerock Properties* (*In re*

7   *Castlerock Properties*), 781 F.2d 159 (9th Cir. 1986), as standing for the proposition that a claim

8   filed defensively does not constitute a consent to the bankruptcy court's jurisdiction and a waiver

9   of the right to a jury trial.   In that case, Castlerock's bankruptcy stayed a state contract action

10  between Castlerock and Piombo so Piombo filed a motion for relief from the automatic stay in the

11  bankruptcy court.   Castlerock filed counterclaims to the stay request.   Piombo moved to sever the

12  counterclaims, questioning the propriety of raising them in response to the request to lift the stay.

13  When the bankruptcy court denied Piombo's motion, he filed an answer to the counterclaims and

14  later filed a claim against the bankruptcy estate, while continuing to object to the bankruptcy

15  court's jurisdiction.  *Id*. at 160.

16         The Ninth Circuit agreed that the bankruptcy court did not have jurisdiction to

17  determine Castlerock's state law claims against Piombo.  It said, "it seems unfair to categorize the

18  counterclaims" as a counterclaim by the estate against one filing a claim against the estate, noting

19  the counterclaims were filed before the claim was filed and that the claim itself would not have

20  been filed if the bankruptcy court had declined jurisdiction over the counterclaims.  781 F.2d at

21  162.  The Circuit rejected Castlerock's reliance on the principle that filing a proof of claim is a

22  consent to jurisdiction, saying "Castlerock cites no case in which the filing of the proof of claim

23  followed the bankruptcy court's assertion of jurisdiction over the counterclaims despite objections

24  from the creditor." *Id*.   It said that a claim filed as a defensive maneuver does not constitute

25  consent.  *Id.* at 163; *see also Thomas v. Adams (In re Gary Brew Enters Ltd*.), 198 B.R. 616, 617

26  (Bankr. S.D. Cal. 1996) (characterizing *Castlerock* as finding that a "defensive" action is not a

27  voluntary appearance consenting to jurisdiction).

28  /////

1    Other courts have found that a claim filed after an adversary proceeding can

2    constitute a consent to the bankruptcy court's equitable jurisdiction and a waiver of jury trial.

3    *See, e.g., Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98-99 (3d Cir. 1992) (saying that a proof

4    of claim form containing disclaimer of any waiver of jury trial right nevertheless waived jury trial

5    and constituted a consent to bankruptcy court jurisdiction, even though it was filed after the

6    adversary complaint); *see also Kerr v. Cressaty Metals, Inc.* (*In re Christou*), 448 B.R. 859

7    (Bankr. N.D. Ga. 2011) (stating the defendants lost their right to a jury trial by filing a proof of

8    claim after the adversary proceeding was filed).

9    Here, KBTF has offered nothing suggesting it filed the proof of claim defensively

10   or under unusual circumstances as in *Castlerock*.  At hearing, KBTF said the claim seeks an

11   offset from the claims raised in the adversary action; as plaintiff responded, however, KBTF

12   could have pleaded offset as an affirmative defense in the adversary proceeding.  *See, e.g., Safine*

13   *v. Sinnott*, 15 Cal. App. 4th 614, 618-19 (1993) (discussing malpractice claim as offset to

14   attorney's fee claim).  KBTF's claim subjects it to the bankruptcy court's jurisdiction.  *Cf. Cohen*

15   *v. Morgan Schiff & Co, Inc.* (*In re Friedman's Inc.*), No. 407CV041, 2007 WL 1541962, at *2

16   (S.D. Ga. May 23, 2007) (rejecting trustee's argument that law firm waived jury trial when firm

17   had not filed a claim for fees but rather "a claim was established by Friedman's when it listed

18   [law firm] in its bankruptcy petition schedules").

19   *Stern* does not require a different result.  As noted, courts have approached *Stern*

20   differently.  In *Kreigman v. Cooper (In re LLS America LLC)*, No. 09-06194 PCW 11, 11-80093-

21   PCW 11, 2012 WL 2564722, at *6-7 (Bankr. E.D. Wash. July 2, 2012), the court said *Stern* did

22   not overrule authority holding that the filing of a proof of claim is a consent to personal

23   jurisdiction over claims held by the estate or that arise under bankruptcy law; it found that actions

24   to avoid preferential transfers remained in the bankruptcy court's jurisdiction.  In *In re Heller*

25   *Ehrman LLP*, 464 B.R. at 354, the court concluded that the bankruptcy court could not enter a

26   final judgment in a fraudulent transfer case, but no proof of claim had been filed.  *See also In re*

27   *Bellingham Ins. Agency*, 702 F.3d at 565 (stating that bankruptcy courts do not "have the general

28   /////

1  authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors

2  to the bankruptcy estate).

3         In a pre-*Stern* case, the Northern District of California found a malpractice action

4  against a law firm to be a core matter, in part because the alleged malpractice was based on the

5  law firm's failure timely to exercise a right available only under bankruptcy law.  *In re Com 21*,

6  No. C-04-03396 RMW, 2005 WL 1606357, at *6.  More recently, in *Schultz v. Chandler*, the

7  Ninth Circuit considered "whether the bankruptcy court properly exercised jurisdiction over a

8  malpractice action against an attorney for the unsecured creditors' committee."  765 F.3d 945,

9  947 (9th Cir. 2014).  The court said that "[w]here a post-petition claim was brought against a

10  court-appointed professional, we have held the suit to be a core proceeding."  *Id*. at 948.  The

11  court relied on cases from other circuits that had reached the same result, reasoning that to

12  restructure the debtor-creditor relationship, the bankruptcy court must have control over the

13  fiduciaries responsible for managing the estate.  *Id*. at 949 (citing *Southmark Corp. v. Coopers &*

14  *Lybrand* (*In re Southmark Corp*.), 163 F.3d 925, 932 (5th Cir. 1999)).   The court continued that

15  "[t]he basis of the claim occurred within the administration of the estate . . . . The claims have

16  effectively called into question the administration of the estate.  Thus, this particular legal

17  malpractice claim is inseparable from the bankruptcy case."  *Id*. at 950.

18         The Seventh Circuit has reached a result similar to that in *Schultz*.  In *Franzin v.*

19  *Haynes & Boone, L.L.P.* (*In re Franzin*), the court considered whether the bankruptcy court had

20  the final authority to enter a final judgment on malpractice and breach of fiduciary duty claims

21  the debtor filed as counterclaims against two law firms the bankruptcy court had authorized him

22  to hire to pursue litigation in the state court.  732 F.3d 313 (7th Cir. 2013), *cert. denied*, 134 S. Ct.

23  1770 (2014).  When the attorneys filed their fee requests, the debtor filed state-law counterclaims

24  for malpractice and breach of fiduciary duty among other things.  *Id*. at 317.  The bankruptcy

25  court considered the claims and entered judgment, and the Seventh Circuit affirmed as to the

26  fiduciary duty and malpractice claims.  It looked to *Stern's* repeated admonition that bankruptcy

27  courts "'lack[] the constitutional authority to enter a final judgment on a state law counterclaim

28  that is not resolved in the process of ruling on a creditor's proof of claim.'"  *Id*. at 319 (quoting

1    *Stern*, 131 S. Ct. at 2620) (alteration in original).  It said that in determining whether counsel was

2    entitled to fees under 11 U.S.C. § 330, the court must consider the nature of the services and so

3    the bankruptcy court would necessarily determine the quality and value of the services, a question

4    that "'cannot stand alone'" from the claim for fees.  *Id*. at 322 (relying on *Southmark*, 163 F.3d at

5    928-30).  The court in *Franzin* concluded that "[u]nlike Vickie's claim in *Stern*, the malpractice

6    claim was not 'independent of the federal bankruptcy law but was 'necessarily resolvable' by a

7    ruling on the Attorneys' fee applications."   Other courts have found *Franzin*'s reasoning

8    applicable to situations involving counsel not approved by the bankruptcy court, noting the

9    bankruptcy court's "statutory obligation to review debtor's counsel's fees." *Tanamor v. Chang*

10   *Law Grp., LLC* (*In re Tanamor*), Bankruptcy No. 10-25530-TJC, Adversary No. 13-00202, 2013

11   WL 3938978, at *4 (D. Md. July 13, 2013): *see also Grausz v. Englander*, 321 F.3d 467, 471 (4th

12   Cir. 2003) (stating the bankruptcy could have 'arising in' jurisdiction because the malpractice

13   case involved the services performed for the bankruptcy estate).

14         Here, as the Trustee points out, KBTF seeks administrative priority for its claim,

15   which shows KBTF seeks payment for services in connection with the Chapter 11 proceedings.

16   *See In re MSB Energy Inc*., 450 B.R. 659, 661-62 (Bankr. S.D. Tex. 2011) (stating fees awarded

17   to a professional employed by a debtor in possession may be given priority distribution under

18   11 U.S.C. § 507).  The claim would not exist apart from the bankruptcy proceedings and the

19   malpractice and breach of fiduciary duty claims will be resolved in the course of considering

20   KBTF's claim for payment.  *Cf. In re Friedman's*, 2007 WL 1541962, at *2 (finding trustee's

21   action for pre-petition malpractice "in no way related to, or arising out of, questions about the

22   proper distribution of the bankruptcy estate").

23         The adversary complaint also pleads claims to avoid fraudulent transfers, to avoid

24   preferential transfers, to recover the debtor's property, the imposition of constructive trust, unjust

25   enrichment and unfair business practices.  ECF No. 5-1 at 20-26.  As KBTF recognizes, all of

26   these claims are "premised entirely on allegations regarding the Defendants' legal services" or are

27   "relabeled state law malpractice claims."  Mot. to Withdraw,  ECF No. 1 at 12, 13.  It notes that

28   the prayer for judgment is "nothing more than an effort to offset any of Plaintiffs' anticipated

1    damages and avoid further payment of legal fees to KBTF." *Id*. at 14.  KBTF cites to

2    *Granfinanciera*, which, as noted, considered whether a person who had not submitted a claim had

3    a right to a jury trial when the trustee sought to recover a fraudulent transfer.  In that case, as

4    noted, the entity from whom the trustee sought recovery had not filed a claim.  Here, in contrast,

5    KBTF has filed a claim, and the other "relabeled" claims in the adversary complaint will be

6    resolved in the process of allowance or disallowance of KBTF's claim.  *Stern*, 131 S. Ct. at 2618.

7    As KBTF acknowledges, all the claims are based on its alleged improper representation, a subject

8    that will be considered as part of the bankruptcy claims process.

9                    B.  Withdrawal of the Reference

10                   Apart from discussing the impact of *Stern* on the question of withdrawal, KBFT

11   has not addressed the *Orion Pictures* factors governing this court's consideration of the request

12   for withdrawal.

13                   In this case, even though the adversary proceeding is newly filed, the bankruptcy

14   judge is intimately familiar with the SK Foods bankruptcy generally and specifically with

15   KBTF's behavior throughout its contact with the debtor and the New Debtor Entities.  It is a more

16   efficient use of judicial resources to maintain reference of the matter to bankruptcy court,

17   assigned to a judge who is more familiar with the adversary proceedings and the underlying

18   bankruptcy case.  Moreover, because of the bankruptcy judge's intimate knowledge of the many

19   proceedings, the uniform administration of bankruptcy matters also weighs against withdrawing

20   the reference.

21                   IT IS THEREFORE ORDERED that defendants' motion to withdraw the

22   reference, ECF No. 1, is DENIED.

23   DATED:  November 18, 2014.

24

25   _____
     UNITED STATES DISTRICT JUDGE

26

27

28